[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff alleges she was injured on March 9, 1996 at approximately 2 p. m. while walking past a door to a dry cleaning and laundromat business when an employee of the business, Cheryl Konicki, negligently pushed the door to the business open striking the plaintiff and causing her to fall to the pavement resulting in injuries and damages. The second count of the complaint seeks damages against the owners of the business Ky and Chanhang Keoke Ymmane, d.b.a. Tres Bon Laundering under respondeat superior.
 Liability
The plaintiff has established by a preponderance of the evidence that Konicki was negligent at said time and place. She was leaving the establishment at the end of her shift. She was smoking a cigarette and backing out of the store while talking to another employee working the counter inside the store and did not look to see if a pedestrian was within the swing range of the door. Although the plaintiff's detailed recollection of how the accident occurred has some inaccuracies (i.e. that Konicki was carrying an armload of clothes, and that the door struck her in the chest) there is substantial and corroborated evidence that she was struck by the door, whereupon she fell and was injured.
Corroboration is found in admissions made by Konicki to Alisha Mercer, the plaintiff's daughter and to a private investigator (Exhibit O), and the statement of a co-worker, CT Page 1518 Patricia Johnson to the same investigator. (Exhibit P).
The defendants, by special defense, allege the plaintiff's own negligence was a substantial factor in bringing about her injuries. They have failed to prove their special defense thus there is no reduction for the claimed negligence of the plaintiff.
 Damages
The plaintiff is an 82 year old female. She was 79 years of age at the time of the accident in March, 1996. She had a left hip replacement in 1985 and in May 1993 had her right hip replaced. It is the right hip and thigh that was injured in this incident.
The day of this incident was March 9, 1996, a Saturday. The plaintiff picked herself up and drove home from the scene. On Monday or Tuesday next, she was in considerable pain (right buttock and thigh area) and was referred by her "gate-keeper" physician to an orthopedic specialist, Dr. Paul Murray. X-rays were taken and Dr. Murray's diagnosis was a contusion to the right buttock and she was given anti-inflammatory medication, and told to use a cane for walking. In April she presented as doing well, but still had some discomfort in the right buttock. He also found the artificial hip was intact and in July 1996 noted no change in the hip position before or after the fall.
The pain did not subside however, and as a result, the plaintiff's activity was substantially curtailed. She could not walk through shopping malls with her daughter as she did prior to the fall and was generally uncomfortable from the pain.
Because of the continuing pain she went to a second orthopedic specialist, Dr. Pedro Romero who, while confirming her artificial hip was not loose, offered no new insights as to alleviating the condition.
She next returned to Dr. Roy Beebe. Dr. Beebe had replaced both her hips and, while he was apparently not an approved HMO provider at the time of the accident, later did become approved by her HMO.
His records indicate that in 1994, (after the hip replacement), the plaintiff complained of right hip pain and in CT Page 1519 May 1995 she had a mildly painful right hip, probably a muscular problem.
When he next saw her in January 1998 and subsequently, his diagnosis was that the plaintiff had degenerative arthritis which was aggravated by the fall. Her right hip pain was now severe compared to 1994-95 and, he concluded, a major cause was due to the fall.
While there is no medical evaluation of permanency, a trier may infer permanency if proven facts support such a conclusion. In this case, the plaintiff continues to experience physical pain three years after the fall and based on her history she is likely to continue with that pain in the future. Her life expectancy is 8.5 years. While her degenerative arthritis condition could be expected, by its nature, to worsen whether the plaintiff fell or not, the evidence convincingly established her condition was abruptly exacerbated as a result of the accident. She is entitled to be fairly and justly compensated for her injuries, including the aggravation of her pre-existing arthritic condition (even though her injuries were more serious because of that prior condition).
Accordingly, the Court assess damages in favor of the plaintiff as follows:
Economic Damages:
Dr. Shifferdecker 719.45
Dr. Murray 405.00
Dr. Romero 250.00
Dr. Beebe 553.82
Rockville General Hospital 112.32
Rockville Radiology 28.00
Total Economic Damages $2068.59
Non Economic Damages $12500.00
Total Damages $14568.59 CT Page 1520
Judgment shall enter accordingly, plus costs.
______________________ Klaczak, J.